■ In the Matter of Pu Cha Van Wert, Respondent, v Schaghticoke Volunteer Fire Department et al., Appellants, and State Insurance Fund et al., Respondents. Workers' Compensation Board, Respondent. [754 NYS2d 90] —Carpinello, J. Appeal from a decision of the Workers' Compensation Board, filed August 27, 2001, which ruled that decedent's death occurred in the course of his duties as a volunteer firefighter.

Claimant seeks benefits under the Volunteer Firefighters' Benefit Law for the death of her husband (hereinafter decedent). The sole dispute concerns whether decedent's activity at the time of his death was rendered in the course of his volunteer firefighter duties thus entitling claimant to benefits under the Volunteer Firefighters' Benefit Law or whether it was rendered in the course of his employment for a private employer—Alonzo Firework Display, Inc. (hereinafter Alonzo)—thus precluding benefits (*see* Volunteer Firefighters' Benefit Law § 5 [2] [e]). The Workers' Compensation Board resolved this factual dispute in favor of claimant, as was its province (*see Matter of Stewart v Town of Chili*, 146 AD2d 933, 934). Upon our review of the record, we find that this determination is supported by substantial evidence and thus must be affirmed (*see id.*; *see also Matter of Dineen v Islip Fire Dist.*, 135 AD2d 969).

On the morning of December 10, 1999, decedent, the Fire Chief of the Schaghticoke Volunteer Fire Department (hereinafter Department), was in the process of burning scrap fireworks material at the Schaghticoke fairgrounds when an explosion occurred fatally injuring him. The scrap material

had been supplied by Alonzo the previous day (i.e., December 9, 1999) for use by the Department in a joint training session with a neighboring fire department.[1] At the time of his death, decedent also worked as a part-time display operator for Alonzo, which consisted of sporadic employment whereby decedent, who was paid by the job, would travel to various locations and conduct fireworks displays.[2] The purpose of the December 9, 1999 training session, wherein debris at the fairgrounds was to be burned in a controlled setting using the scrap material as an accelerant, was to educate the Department's younger members about the burning capacity of this material since Alonzo fell within its jurisdiction. Consistent with training session protocol, the Rensselaer County Bureau of Emergency Services was notified that a controlled burn was being conducted that night. Moreover, fire apparatus was at the site and a drill report completed.

The joint training session, however, was meagerly attended thus requiring decedent to return to the fairgrounds the following morning to finish the job. At this time, decedent again contacted the Rensselaer County Bureau of Emergency Services and notified the dispatcher of the controlled burn. Although decedent had requested his son, also a member of the Department, to assist him with the continuance of the burn, it is undisputed that no other firefighter was present at the fairgrounds that morning. Decedent was accompanied by a full-time Alonzo employee; however, it is clear that this employee's primary purpose for being at the fairgrounds that morning was to return Alonzo's vehicle to the company at the completion of the disposal.

There can be little dispute that decedent's presence at the fairgrounds on the morning of his death was the direct result of a training session of the Department. Indeed, it was in his capacity as fire chief that decedent scheduled the December 9, 1999 session and obtained the scrap material from Alonzo for use during the session. While the night drill may have been over when decedent returned to the fairgrounds the following morning, he was nevertheless still acting in the course of his firefighting duties when he returned to burn the remainder of the material. To be sure, decedent's ability to obtain the scrap material from Alonzo had nothing to do with his status as its

---

**1.** The record reveals that Thursday is the regular drill night for each of the participating fire departments and that December 9, 1999 was in fact a Thursday.

**2.** The last time decedent had conducted a fireworks display for Alonzo prior to his death was the preceding Labor Day weekend.

part-time employee. To the contrary, the record reveals that Alonzo regularly supplied scrap material to numerous local fire departments for use in similar training sessions. Moreover, Alonzo neither received nor provided compensation for the removal or disposal of same. More to the point, decedent received no compensation from Alonzo for burning the scrap material.

Given these facts, there is substantial evidence to support the Board's determination that decedent was acting in the course of his firefighter duties when killed, thus entitling claimant to benefits under the Volunteer Firefighters' Benefit Law (*see e.g. Matter of Coburn v Hewlett Fire Dept.*, 111 AD2d 1071; *Matter of Higgins v Ronkonkoma Fire Dist., Volunteer Fire Co.*, 81 AD2d 721; *compare Matter of Lessard v Mattituck Fire Dept.*, 200 AD2d 877).

Cardona, P.J., Mercure, Spain and Kane, JJ., concur. Ordered that the decision is affirmed, with one bill of costs.